IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ATTICUSS SHARP,

    APPELLANT,

v.

DENNIS K. BRANDMAN, et al.,

    Appellees.

No. C 05-02010 JSW

**ORDER RE: BANKRUPTCY APPEAL**

    Now before the Court is Appellant/Creditor Atticus Sharp's ("Appellant") appeal from the judgment by the bankruptcy court dated December 22, 2004, in favor of Appellees/Debtors Dennis Brandman and Judith Brandman ("the Brandmans"). Pursuant to Civil Local Rule 16-4, the case has been submitted on the papers without oral argument. Having carefully reviewed the administrative record and considered the parties' papers, their arguments and the relevant legal authority, the Court hereby AFFIRMS the bankruptcy court's judgment.

**BACKGROUND**

    Appellant alleges that in November 1997, he and Mrs. Brandman started a partnership business called Rare Essence in San Francisco, California. (Administrative Record ("AR"): Docket No. 10 (Cross Compl., ¶ 6).) Appellant contends that in early January 2002, he informed Mrs. Brandman that he wanted to sell his interest in the partnership and open a new business in another location. (*Id.* at ¶ 21.) Appellant alleges that around February 2002, he and Mrs. Brandman entered into an oral agreement in which Mrs. Brandman would purchase his interest in the partnership for $125,000, payable on June 30, 2002. (*Id.* at ¶ 23.) He further

alleges that in reliance on Mrs. Brandman's promise to pay him $125,000, he continued to invest time and money into his new business with the expectation that he would use the promised money to develop that business. (*Id.* at ¶ 10.) Appellant contends that on July 6, 2002, Mrs. Brandman told him that she would not pay him the $125,000, demanded that he accept $60,000 instead for the purchase of his interest, and threatened to sue him for opening a competing business if he did not agree to the new price. (*Id.* at ¶ 30.) Appellant maintains that he did not agree to Mrs. Brandman's demand. (*Id.*)

The Brandmans contend that they never offered to purchase Appellant's interest in the partnership. (AR: Docket No. 20 (Direct Testimony Declaration of Dennis Brandman and Judith Brandman, ¶ 11).) The Brandmans assert that Appellant abandoned the partnership and opened a competing business. (*Id.*) They further contend that Appellant interfered with the Brandmans' new business resulting in economic damages for lost business. (*Id.*) On October 16, 2002, Mrs. Brandman filed a complaint against Appellant alleging, *inter alia*, that Appellant breached the partnership agreement and breached his fiduciary duty by opening a competing business. (AR: Docket No. 17 (Declaration of Nina Greeley ("Greeley Decl."), ¶ 4).) On December 23, 2002, Appellant filed a cross-complaint against the Brandmans alleging, *inter alia,* fraud by false promise to buy Appellant's partnership interest, breach of fiduciary duty, and breach of the Partnership Agreement. (Cross Compl., ¶¶ 5-42.)[1]

On August 26, 2004, the Brandmans filed a Chapter 13 petition in the United States Bankruptcy Court for the Northern District of California. (AR: Docket No.1.) Appellant filed an objection to the confirmation of the Brandmans' Chapter 13 plan on October 12, 2004. (AR: Docket No. 8.) Appellant contends that the Brandmans are not eligible for Chapter 13 relief because the amount of their total noncontingent, liquidated, unsecured debt exceeds the statutory limit of $307,675.00 for such debt under 11 U.S.C. § 109(e) by approximately $42,000. (*Id.*; Br. at 5 fn.5.) Specifically, Appellant asserts that the Brandmans are ineligible because he has a noncontingent, liquidated, unsecured claim against Mrs. Brandman for

---

[1] Appellant subsequently dismissed his claim against Keith Brandman in the cross-complaint. (Greeley Decl., ¶ 5.)

2

$50,950.60, comprising of the out-of-pocket-expenses Appellant incurred in operating his new business, including fees for the business permit, various furniture, and display fixtures. (AR: Docket No. 24 (Updated Declaration of Atticuss Sharp In Support of Objection to Confirmation of Chapter 13 Plan, ¶ 6); Docket No. 25 (Updated Objection to Confirmation Plan, ¶¶ F(5), F(7).) If the $50,960.50 is considered noncontingent, liquidated, unsecured debt, the Brandmans' debt would exceed the statutory limit for eligibility under § 109(e) by approximately $42,000 and would not qualify for relief under Chapter 13. (AR: Docket No. 25 (Updated Objection to Confirmation Plan, ¶ G).)

On December 20, 2004, the bankruptcy court held a hearing to determine whether Appellant's claim against the Brandmans for breach of the alleged contract to buy his partnership interest was "liquidated" for purposes of eligibility under § 109(e). (AR: Transcript of December 20, 2004 Proceedings ("TR") at 3, 9-10.) At the hearing, the bankruptcy judge noted that certain out-of-pocket expenses for Appellant's new business seemed "speculative," pointing to the fact that many of the expenses totaled up to perfectly even dollar amounts. (*Id.* at 8, 10.) Appellant requested the court's permission to submit a supplementary declaration attaching all of the receipts on which the list of expenses was based. (*Id.* at 11.) The bankruptcy court denied the request. (*Id.*) On December 22, 2004, the bankruptcy judge found that the claim for $125,000 was a liquidated debt, but that Appellant's claim for consequential damages in the amount of $50,950.60 was not because the amount was not readily ascertainable, stating: "Many of the alleged damages are clearly estimates, and whether or not any of them are properly claimed requires a full trial on damages, not a quick calculation. They are all based on the unproven and speculative allegation that Sharp's new business would not have failed if the Brandmans had paid him." (AR: Docket No. 29 (Memorandum on Objection to Confirmation).) Accordingly, the bankruptcy judge confirmed the Brandmans' Chapter 13 plan. (*Id.*) On March 30, 2005, Appellant appealed the bankruptcy court's judgement to this Court. (AR: Docket No. 45.)

3

# ANALYSIS

## A. Standard of Review.

District courts have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges. 28 U.S.C. § 158. Here, the sole issue on appeal is whether the bankruptcy judge erred when he found that the amount of consequential damages was not readily ascertainable, rendering the damages unliquidated for purposes of eligibility under § 109(e). Whether a debt is liquidated for purposes of eligibility under § 109(e) requires the interpretation of the Bankruptcy Code and is reviewed de novo. *In re Slack,* 187 F.3d 1070, 1073 (9th Cir. 1999).

## B. The Alleged Consequential Damages Are Not Liquidated.

Appellant contends that the out-of-pocket expenses used to finance his new business are consequential damages resulting from Mrs. Brandman's breach of the oral agreement to pay him $125,000 for his partnership interest and that the amount of these consequential damages are liquidated because the amount is readily ascertainable by a simple calculation of the receipts. (Br. at 14, 18.)

"Only an individual with regular income that owes, on the date of filing of the petition, noncontingent, liquidated, unsecured debts of less than $307,675.00 and noncontingent, liquidated, secured debts of less than $922,975 . . . may be a debtor under Chapter 13 of [Title 11]." 11 U.S.C. § 109(e). A debt is liquidated for purposes of calculating eligibility for relief under § 109(e) if the amount of the debt is "readily ascertainable, notwithstanding the fact that the question of liability has not been finally decided." *In re Slack,* 187 F.3d at 1075. "Even if a debtor disputes the existence of liability, if the *amount* of the debt is calculable with certainty, then it is liquidated for purposes of § 109(e)." *Id.* at 1074 (emphasis in original); *accord In re Scovis,* 249 F.3d 975, 983 (9th Cir. 2001). Whether a debt is readily ascertainable depends on whether the amount is easily calculable or whether an extensive hearing will be needed to determine the amount of the debt. *In re Slack,* 187 F.3d at 1074. In *In re Slack,* the parties stipulated to the amount of damages owed if the debtor was found liable. *Id.* at 1075. Thus, the Ninth Circuit found that the debt was liquidated because the amount was readily ascertainable in

4

light of the parties' stipulation. *Id.*

Here, both parties agree that the central issue for purposes of eligibility rests on the determination of the amount of damages, not liability. (Br. at 18; Opp. Br. at 9.) Appellant contends that the amount of consequential damages is readily ascertainable because "the court can accurately determine the amount of Sharp's claim for out-of-pocket costs, for purposes of an eligibility determination, by simply adding up those costs." (Br. at 19.) Appellant contends that had he been granted permission, Appellant could have provided the receipts documenting each cost. (*Id.*)

Under California law, consequential damages are losses arising from circumstances that are particular to a contract or to the parties, and are recoverable if the special or particular circumstances from which they arise were actually communicated to or known by the breaching party. *Lewis Jorge Constr. v. Pomona Unified Sch. Dist.,* 34 Cal. 4th 960, 968-69 (2004). Consequential damages are limited to losses that were actually foreseen or were reasonably foreseeable when the contract was formed. *Id.* at 970 (internal citations omitted). Importantly, consequential damages are recoverable only if they were a "probable result" of a party's breach. *See id.* In addition, it is "well established in California that a party injured by a breach of contract is required to do everything reasonably possible to minimize his own loss and thus reduce the damages for which the other party has become liable." *Sackett v. Spindler,* 248 Cal. App. 2d 220, 238 (1967) (quoting *Valencia v. Shell Oil Co.,* 23 Cal. 2d 840, 844 (1944)); *see also Eidsmore v. RBB, Inc.,* 25 Cal. App. 4th 189, 199 (1994).

Appellant argues that his alleged out-of-pocket expenses are consequential damages because Mrs. Brandman knew at the time that the alleged contract was formed that Appellant intended to use the buyout money to finance his new business. Thus, he argues, the failure of his new business and the accompanying expenses were a "probable result" of Mrs. Brandman's alleged breach of the oral contract.

In the instant case, the bankruptcy judge determined that whether any of the expenses were "properly claimed requires a full trial on damages." (AR: Docket No. 29.) Here, even if it were assumed that Mrs. Brandman knew of Appellant's intention to use the buyout money to

5

finance his new business and that she breached the oral agreement to pay him, it is still unclear whether his new business would have succeeded absent the breach. A number of factors may have contributed to the failure of his new business, such as its location, its marketing, or a lack of demand for its products. Thus, a hearing would be required to determine whether the failure of Appellant's new business was a "probable result" of his not receiving the allegedly promised $125,000, such that the out-of-pocket expenses related to the new business would constitute consequential damages.

Appellant's argument that the out-of-pocket expenses are easily calculable suffers from another defect. Appellant assumes that each individual cost is properly claimed as an out-of-pocket expense for his new business. However, it is not clear that these costs were actually connected to the operation of his new business. For example, Appellant lists as out-of-pocket expenses a flower market pass, a stereo and folding tables, and furniture from several stores including an antique store. Although these items could be used to set up and operate Appellant's new business, they could also have been purchased for personal use. It is not clear from the face of the itemized list of out-of-pocket expenses that each item was actually used for the operation of the new business. A hearing would be required to determine whether Appellant actually incurred the claimed expenses and whether these expenses were limited to the operation of the new business and not used for, or commingled with, personal use.

Moreover, because a breaching party may dispute the amount of consequential damages and offer evidence to show that the injured party did not do everything reasonably possible to mitigate the amount of consequential damages, this issue would also require a hearing to determine whether Appellant tried to limit his out-of-pocket expenses by attempting to return the items bought for the business or by borrowing money from another lender. *See Eidsmore,* 25 Cal. App. 4th at 199 (recognizing an aggrieved seller's obligation to mitigate damages). Thus, even if Mrs. Brandman is liable for breach of the alleged oral agreement, it not clear whether any consequential damages exist, or if there are consequential damages, which costs she would obliged to pay. Therefore, the Court finds that the bankruptcy court did not err in determining that the alleged consequential damages are not readily ascertainable, and thus not

liquidated.

## CONCLUSION

For the foregoing reasons, the judgment entered by the bankruptcy court on December 22, 2004 finding that the amount of the alleged consequential damages was unliquidated for purposes of eligibility under § 109(e) is AFFIRMED.

**IT IS SO ORDERED.**

Dated: November 29, 2006

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE